**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
July 16, 2009

Charles R. Fulbruge III
Clerk

No. 09-10048
Summary Calendar

RANDY SPEARS

Plaintiff-Appellant

v.

PATTERSON UTI DRILLING CO.

Defendant-Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 6:07-CV-43

Before SMITH, STEWART, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Randy Spears ("Spears"), an African American, filed suit against Patterson UTI Drilling Co. ("Patterson") alleging employment discrimination based on race in violation of 42 U.S.C. § 1981. The district court granted Patterson's motion for summary judgment, and Spears appealed. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Patterson originally hired Spears on April 16, 2005, as a derrick hand to work on an oil rig near San Angelo, Texas. Spears worked there for approximately one year before resigning. On September 26, 2006, Patterson again hired Spears as a derrick hand. While Spears was working for Patterson this second time, the driller on his rig became intoxicated, argued with a supervisor, and turned off all the lights on the rig. As a result, Patterson dismissed the driller. Spears's supervisor, Tony Valencia ("Valencia"), recommended that Spears be promoted to driller, and Drilling Superintendent Manuel Gallegos ("Gallegos") approved the promotion. Valencia agreed to "babysit" Spears to help him become acclimated to the new position because they "need[ed] a driller."

Spears worked for Patterson as a driller for about six months, during which time he received mixed feedback. He was known as a hard worker and received no written warning for poor performance, but was spoken to informally on two occasions. Valencia told him that he had performed the "nipple up" procedure[1] too slowly on his first day as a driller. Later Valencia told him that he was doing "too much" of the crew's work. Spears alleges that his supervisors, including Valencia and Gallegos, made derogatory comments or racial slurs in his presence on five separate occasions while he was employed as a driller for Patterson.

In April 2007, a supervisor complained to Gallegos that Spears and his crew had taken too long, some eight hours, to perform the "nipple up" procedure. Gallegos discharged Spears and his entire crew. Two crew-members, both non-members of Spears's protected class, were rehired immediately. The other

---

[1] The "nipple up" procedure is a complex protective measure on oil rigs involving the assembly of well-control or pressure-control equipment on a wellhead. Patterson claims that the procedure should take three to four hours.

African American crew-member eventually returned to work for Patterson. Spears has not reapplied.

On October 9, 2007, Spears filed a discrimination claim against Patterson in the Northern District of Texas. He alleges that Patterson violated 42 U.S.C. § 1981 by terminating his employment based on race. Patterson moved for summary judgment on September 15, 2008, on the grounds that there is no evidence that Spears was discharged due to his race or color. The district court granted Patterson's motion for summary judgment on December 30, 2008. Spears appeals.

## II. ANALYSIS

### A. Standard of Review

This Court reviews the district court's grant of summary judgment *de novo*, applying the same legal standard as the district court in the first instance. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (citation omitted). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In making a determination as to whether there is a genuine issue of material fact, this Court considers all of the evidence in the record but refrains from making credibility determinations or weighing the evidence. *Turner*, 476 F.3d at 343 (citation omitted). We draw all reasonable inferences in favor of the nonmoving party, but "a party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Id.* (citations omitted). "Summary judgment is appropriate if a reasonable jury could not return a verdict for the nonmoving party." *Id.* (citation omitted).

## B. Spears's Racial Discrimination Claim

Section 1981 entitles all persons within the jurisdiction of the United States with the same rights to enter in and enforce contracts as those "enjoyed by white citizens." 42 U.S.C. § 1981. The elements of an employment discrimination claim asserted under § 1981 are identical to a discrimination claim asserted under Title VII. *Flanagan v. Aaron E. Henry Cmty. Health Sevs. Ctr.*, 876 F.2d 1231, 1233 (5th Cir. 1989). Thus, employment discrimination claims brought under § 1981 are analyzed under the same evidentiary framework as Title VII claims. *Roberson v. Alltel Information Servs.*, 373 F.3d 647, 651 (5th Cir. 2004).

Under Title VII it is "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Spears has not provided direct evidence of discrimination, therefore, his claim based on circumstantial evidence is analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Turner*, 476 F.3d at 345.

Spears must first establish a *prima facie* case of discrimination by establishing that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subjected to an adverse employment action; and (4) was replaced by someone outside the protected class, or in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004). Once Spears demonstrates a *prima facie* case, Patterson must articulate a legitimate, non-discriminatory reason for its decision to terminate Spears. *Id.* If Patterson meets this burden, Spears must then offer sufficient evidence to raise a genuine issue of material fact as to whether (1) Patterson's reasons are

false or unworthy of credence and, thus, merely a pretext for discrimination.[2] *See id*. at 312.

### 1. *Spears's* prima facie *case of discrimination*

Spears successfully establishes a *prima facie* case of discrimination. The first three elements are easily met: Spears is an African American, was recommended for the position by a supervisor, and was discharged. Patterson challenges only the fourth element of Spears's *prima facie* case, arguing both that Spears was not "replaced" but rather that his responsibilities were absorbed by other employees, and that similarly situated employees of several races were also fired under the same circumstances. As the district court correctly explained, Spears met the fourth element because Patterson's evidence described "who replaced" Spears and Spears's evidence demonstrated that his replacement was not a member of his protected class. *See, e.g., Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 149-150 (5th Cir. 1995).

### 2. *Patterson's legitimate, non-discriminatory reason*

Spears raises an inference of discrimination by meeting his *prima facie* burden. In order to rebut this inference, Patterson must offer a legitimate, non-discriminatory reason for its decision to terminate Spears. Patterson asserts that it discharged Spears and his crew for taking too long to perform the "nipple up" procedure. An employee's poor job performance is a legitimate, non-discriminatory reason for discharge. *Little v. Republic Refining Co.*, 924 F.2d 93, 96 (5th Cir. 1991). This shifts the burden back to Spears to demonstrate that Patterson's reason is merely pretext for discrimination.

### 3. *Pretext for discrimination*

Spears asserts several theories to demonstrate pretext. None of these raise a genuine issue of material fact.

---

[2] Spears could also demonstrate that while true, Patterson's reason was also motivated by a racial purpose. Spears does not allege that Patterson's reason was true here.

a. Racial animus

Spears first argues that he provided evidence of Patterson's racial animus by citing five occasions where supervisors Valencia and Gallegos directed derogatory comments or racial slurs towards him. Evidence of animus towards a protected group may indicate pretext. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The district court held that evidence of the comments alone was insufficient to raise a fact issue on pretext. Spears failed to provide the Court with the dates of four allegedly discriminatory comments.[3] Spears did provide the date for one comment made by Gallegos near the time Spears was discharged. Gallegos told Spears that he no longer disliked African Americans, just whites. This comment, however, is vague. This Court has explained that "comments that are 'vague and remote in time' are insufficient to establish discrimination." *Brown v. CSC Logic, Inc.*, 82 F.3d 651, 655 (5th Cir. 1996) (quoting *Guthrie v. Tifco Indus.*, 941 F.2d 374 (5th Cir. 1991)).

Spears argues that the district court took a narrow view of what comments may constitute indications of racial animus. He argues that the Seventh Circuit has given greater credit to similar evidence. *See Hunt v. City of Markham, Ill.*, 219 F.3d 649, 652 (7th Cir. 2000) (finding that summary judgment was inappropriate where a decision-maker made repeated racist and ageist remarks). Spears argues that in the context of the other un-dated occurrences when African Americans were called derogatory names and considered bad luck, a jury could reasonably conclude that Gallegos's comment indicates racial animus.

None of this undermines the district court's conclusion. In *Hunt*, the Seventh Circuit dealt with comments from decision-makers that were constant,

---

[3] Other comments included the use of the term "mayates," which is Spanish slang for dark skinned people and means dung beatle. Spears alleges that he was ridiculed for his "ghetto" habits and for dressing like a "gangster." He also accuses Gallegos of saying that it was "bad luck to have blacks on a rig."

specific, and proximate in time. *See id.* Unlike the plaintiff in *Hunt*, Spears has provided evidence that many employees on his oil rig made racially derogatory remarks but could neither date them nor link them to the decision-maker. As stated above, comments which are distant in time are insufficient to support a claim of discrimination. *Brown*, F.3d at 655. The one comment Spears can date is from the decision-maker but only reveals that Gallegos may have harbored racial animus towards African Americans at a point in the past. Such vague evidence does not raise a genuine issue of material fact suggesting pretext for discrimination. *See, e.g., Petts v. Rockledge Furniture LLC*, 534 F.3d 715, 723 (7th Cir. 2008); *Auguster v. Vermillion Parish School Bd.*, 249 F.3d 400, 404 (5th Cir. 2001).

Spears also argues that this Court's approach towards comments as evidence of pretext or racial motivation as articulated in *Brown* was invalidated by the Supreme Court in *Reeves*. The Court in *Reeves* denounced the use of a four-part test that was articulated in *Brown*. *Reeves,* 530 U.S. at 151. The test from *Brown* required that the comments be (1) related to the protected class, (2) proximate in time to the adverse employment action, (3) made by an individual with authority over the employment decision at issue, and (4) related to the employment decision at issue. *Brown*, 82 F.3d at 655. However, *Reeves* and its progeny explain that derogatory comments must be analyzed according to their content and their speaker. *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 226 (5th Cir. 2000). The only comment that is attributable to the decision-maker in this case is Gallegos's statement that he no longer harbors racial animus towards African Americans. This statement is simply insufficient to raise a genuine issue of material fact as to pretext for discrimination because it is vague and only demonstrates past, if any, animus.

b. Spears's other theories of pretext

Spears offers several other theories that suggest that Patterson's given

reason is a pretext for discrimination. He argues that Patterson's reason–Spears's crew's slowness in "nippling up"–is false because it was not the reason originally given to Spears for his discharge. He also points out that Gallegos and a supervisor disagreed about who first recommended the termination. Evidence that an employer has given a false reason for terminating employment may contribute to a determination that the reason was pretext for discrimination. *Haun v. Ideal Indus., Inc.*, 81 F.3d 541, 546 (5th Cir. 1996). This does not aid Spears, however, because he fails to offer evidence that the given reason was false. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995). In fact, the evidence confirms that on two occasions this procedure took longer than expected.

Spears also argues that Patterson's reason raises a suspicion of pretext because Patterson did not take required steps prior to the final termination decision. He claims that Patterson's disciplinary policy requires a written reprimand before termination. Patterson never issued a written reprimand to Spears and Patterson did not launch an investigation into the reason the "nipple up" procedure took longer than ususal. While departure from normal company procedure might contribute to a finding of pretext, Spears must provide evidence that the given reason was false or that his termination was motivated by a discriminatory purpose to survive summary judgment. *See Richardson v. Monitronics Int'l.*, 434 F.3d 327, 336 (5th Cir. 2005). Spears failed to provide evidence that demonstrates either a false reason or a discriminatory motive. Patterson fired Spears's entire crew, which was made up of members of several racial groups without previous written reprimands or an investigation into the reason for slow performance. Also, all members of Spears's crew, including the other African American member, have returned to work for Patterson. Spears never reapplied. He alleges the other African American member was rehired after the suit began in order to defeat his claim. The district court dismissed

8

this allegation as baseless because Spears was unable to provide the date that the other African American crew-member recommenced work with Patterson. Spears fails to raise a genuine issue of material fact which suggests that Patterson's given reason is a pretext for discrimination.

### C. Spears's Challenge of the "Same Actor Inference"

Spears also questions the district court's conclusion that the "same actor inference" weighs against his evidence of discrimination. The same actor inference creates a presumption that animus was not present where the same actor responsible for the adverse employment action either hired or promoted the employee at issue. Gallegos was involved with both Spears's promotion and discharge. Spears correctly argues that the presumption created by the same actor inference is not irrebuttable. *Haun*, 81 F.3d at 546. The district court did not, however, use the "same actor inference" as mandatory in noting that the inference weighs against Spears in his claims that Patterson only rehired his African American crew-member in retaliation for the commencement of this case. That allegation was not supported by evidence. There is no error in the district court's application of the "same actor inference."

### III. CONCLUSION

For the foregoing reasons, the district court's grant of Patterson's motion for summary judgment is AFFIRMED.

9