# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-60925
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2020

Lyle W. Cayce
Clerk

CHRISTINE D. TINGLE,

      Plaintiff - Appellant

v.

MERCHANTS & MARINE BANK,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:18-CV-149

Before JOLLY, JONES, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

In this age discrimination case, Christine Tingle—a former employee of defendant Merchants & Marine Bank—appeals the district court's well-reasoned grant of summary judgment.[1] The sole issue presented on appeal is whether Tingle has shown that there is a genuine issue of material fact as to

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[1] "This court reviews de novo the district court's grant of summary judgment, employing the same criteria used in that court." *E.E.O.C. v. Tex. Instruments Inc.*, 100 F.3d 1173, 1179 (5th Cir. 1996).

No. 19-60925

whether the defendant's asserted basis for terminating her—falsifying a time card—was pretext for age discrimination. *Cf. Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378–79 (5th Cir. 2010).[2]

Tingle raises two principal arguments in support of her claim of pretext. First, she contends that she was disparately treated in that a younger employee, Lakelia Jones (age 39), also falsified timesheets but was not fired. Second, Tingle argues that her supervisor, Lisa Adams, and the human resources director who made the termination decision, Sheryl Wolfe, intentionally refrained from alerting her about the timekeeping issue until it was too late to fix it, all in an effort to replace Tingle with a younger employee. Both of these arguments are unavailing.

As to Tingle's first contention, Lakelia Jones is not a proper comparator for the purpose of establishing disparate treatment. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("To establish a claim of disparate treatment, [the plaintiff] must show that [the defendant] gave preferential treatment to a younger employee under 'nearly identical' circumstances." (quoting *Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990))). Whereas Tingle was terminated for intentionally remaining on the clock despite not working and despite being expressly told to clock out, no record evidence establishes that Jones was trying to obtain pay for unearned, unworked time. Jones merely clocked out for her lunch break in the afternoon rather than during the lunch period. Although Jones's conduct did not align with company policy, Jones never sought compensation for time she did not work. The same cannot be said for Tingle, who indicated to Wolfe that she

---

[2] It is undisputed that Tingle has established a prima facie case of age discrimination and that the defendant provided a legitimate, nondiscriminatory reason for Tingle's termination.

No. 19-60925

delayed clocking out after being instructed to for the purpose of "g[etting] [her] hours in."

Tingle disputes the record evidence and claims that Wolfe must have known Jones was falsifying timesheets because Wolfe had been on lunch breaks with Jones that lasted longer than the allotted hour. But, as Wolfe explained in her affidavit, she could not recall every occasion when she and Jones went to lunch together or the length of those lunches. Wolfe also had no reason to believe that Jones was not clocking out when they went to lunch. The allegations of improper timekeeping lodged against Jones were limited to two specific days. And the records available for those two days do not indicate that Jones was "on-the-clock without permission for a longer period than she actually worked, nor did such records indicate that Jones was paid for more time than she had worked."

Again, such was not the case for Tingle, whose timekeeping error, from the defendant's perspective, was intentional and done for the purpose of obtaining pay for unworked time. *Cf. Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005) ("Management does not have to make proper decisions, only non-discriminatory ones."). Because Tingle and Jones engaged in markedly different conduct,[3] Tingle cannot rely on a theory of disparate treatment to prove pretext. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 221 (5th Cir. 2001) ("[T]he conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be

---

[3] Tingle and Jones also reacted very differently when confronted with their mistakes. Tingle acknowledged that she was supposed to clock out at 4:00 p.m. on September 7, and admitted that, instead of following Adams's clear instructions, she "just got [her] hours in" and clocked out at 4:30 p.m. In contrast, Jones expressed a misunderstanding about when she was supposed to clock out, explaining that she was clocking out in the afternoon, during what was supposed to be paid time, to cover her lunch hour so that she would not go over time or receive any extra paid time for each day.

similarly situated accounts for the difference in treatment received from the employer.").

No evidence corroborates Tingle's second argument—that both Adams and Wolfe intentionally withheld information about Tingle's timekeeping error to create an opportunity to replace Tingle with a younger employee. First of all, neither Adams nor Wolfe had an obligation under company policy to notify Tingle of her mistake. Indeed, Tingle concedes it was her responsibility to initiate the process for submitting a time exception form and correcting issues with her time report.

Adams, moreover, did not make the decision to fire Tingle; Wolfe did. Tingle acknowledges this but contends that Merchants & Marine Bank can nonetheless be held liable for Adams's conduct through a "cat's paw" theory. Such a theory requires proof that Adams harbored a discriminatory animus and "possessed leverage, or exerted influence, over the titular decisionmaker." *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 653 (5th Cir. 2004) (quoting *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226 (5th Cir. 2000)). Tingle's proffered evidence is insufficient to substantiate a "cat's paw" theory. She suggests that ageism is demonstrated by the fact that Adams reported Tingle's timekeeping error to Wolfe and then later hired a twenty-year old woman to replace Tingle. Adams, however, stated in her affidavit that she reported Tingle because Tingle disobeyed her direct order and remained on the clock despite not working. Tingle's subjective belief to the contrary is insufficient to rebut that sworn statement. *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 153 (5th Cir. 1995) (subjective belief of age discrimination is insufficient to establish pretext). Further, both Adams and Wolfe confirmed that Adams had no input or involvement in the discharge decision. Wolfe unilaterally made the call. Tingle's "cat's paw" theory thus fails.

Her argument concerning Wolfe fares no better. Tingle asserts that Wolfe held onto Adams's complaint until after the pay period ended to ensure that Tingle could not fix her mistake. The record tells a different story. Tingle's timekeeping error occurred on Thursday, September 7. As an employee, she had an obligation to submit a time exception form to correct any inaccurate timekeeping. She failed to do so. Moreover, Tingle did not return to work until the next Monday, September 11, after the pay period had ended. Wolfe confronted Tingle that Monday, the first business day she could do so. Additionally, before confronting Tingle, Wolfe called Adams and the payroll department to ask whether Tingle had submitted a time exception form, demonstrating that she was not trying to "set up" Tingle for termination. Wolfe also went into the meeting with Tingle having prepared both a final warning and a termination memo because she wanted to hear Tingle's side of the story before deciding which disciplinary measure to take. Even disregarding all of that, there is no evidence that Wolfe's decision was driven by an ageist animus. Tingle posits that ageism is demonstrated by Wolfe "covering" for her younger subordinate, Jones, who was likewise falsifying her time. But, for reasons already explained, Jones's situation is not comparable to Tingle's; she was not falsifying her time report in an effort to receive compensation for time not worked.

Because Tingle has failed to carry her burden of showing a genuine dispute of material fact as to whether the defendant's legitimate, nondiscriminatory reason for Tingle's discharge was pretextual, the district court was correct to grant the defendant's motion for summary judgment.

**AFFIRM.**